**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
MARTINSBURG**

**ADONNIS R. SHEPHEARD, SR.,**

Plaintiff,

**v.**                                                   **Civil Action No. 3:22-CV-55
(GROH)**

**SHELBY SEARLS, Warden,
JOHN DOE, Correctional Officer,
JANE DOE, Nurse, and
WEXFORD HEALTH CARE,**

Defendants.

## REPORT AND RECOMMENDATION

### I.      INTRODUCTION

Before the Court is the *pro se* Plaintiff's October 20, 2023, second amended civil rights complaint filed pursuant to 42 U.S.C. § 1983. ECF No. 60.[1] The Plaintiff is currently an inmate at the Parkersburg Correctional Complex in Parkersburg, West Virginia. https://apps.wv.gov/OIS/OffenderSearch/DOC/Offender/Search. Previously, Plaintiff was an inmate at Huttonsville Correctional Center ("HCC" or "Huttonsville") in Huttonsville, West Virginia, where he contends his civil rights were violated. ECF No. 60 at 4.

This matter was referred to the undersigned pursuant to 28 U.S.C. § 1915A(b) for judicial review. For the reasons set forth below, this Court recommends that Plaintiff's complaint be dismissed with prejudice for failure to state a claim.

---

[1] All ECF number cited herein are in 3:22-CV-55, unless otherwise noted.

## II.   FACTUAL AND PROCEDURAL HISTORY

### A.   Prior Pleadings

The Plaintiff initiated this case by filing a complaint on March 25, 2022. ECF No. 1. He paid the initial partial filing fee on June 28, 2022. ECF No. 27. On October 7, 2022, the Court granted the Plaintiff's motion to amend the complaint, and ordered that the previously filed first amended complaint be filed as a new pleading. ECF Nos. 32, 33.

On December 19, 2022, the undersigned recommended dismissal of the Plaintiff's complaint in a Report and Recommendation. ECF No. 43. The Plaintiff filed objections to the Report and Recommendation on January 17, 2023, and requested permission to amend his complaint. ECF No. 45 at 8.

The District Court declined to adopt the Report and Recommendation in an order issued on September 20, 2023, which acknowledged that the Court did not address the merits of the Report and Recommendation, but permitted the Plaintiff to file a second amended complaint. ECF No. 53.

Consistent with the Court's order, the Plaintiff filed a second amended complaint on October 20, 2023. ECF No. 60.

### B.   Plaintiff's Second Amended Complaint

The Plaintiff's second amended complaint alleges five grounds for relief against the Defendants, all based on alleged violations of the Eighth Amendment: (1) that Defendant John Doe, a correctional officer stationed on HCC Dorm B2 failed to protect the Plaintiff from assault, or to notice multiple inmates who entered the Plaintiff's cell and stabbed him [ECF No. 60 at 7]; (2) that Defendant Jane Doe, a nurse who responded and administered medical attention to the Plaintiff, failed to send him to the emergency room

to receive stitches, and although "steri stitches" were subsequently administered to some of the Plaintiff's lacerations, the delay of treatment and insufficient care resulted in the formation of keloid scars [Id. at 8]; (3) Defendant Warden Shelby Searls ("Searls") placed the Plaintiff in segregation for medical reasons, but denied him privileges like phone calls, commissary, other "Admin-seg" privileges, and prevented him from successfully pursuing administrative remedies [Id.]; (4) Searls failed to protect the Plaintiff from gang members who were also incarcerated at HCC, and denied the Plaintiff placement in a dorm that would "allow him minimal conflict upon release from seg[regation]" [Id.]; and (5) Huttonsville staff failed to protect the Plaintiff from fellow inmates, then failed to treat the Plaintiff's wounds after his assault, which resulted in damage to the Plaintiff's skin and mental health [Id.].

The Plaintiff claims his injuries consist of the physical stabbing and permanent scarring resulting therefrom, inadequate medical care, and physical and emotional abuse. Id. at 9. For relief, the Plaintiff requests that the Court award him monetary compensation, and further requests that his skin be examined by a specialist. Id.

Summonses were issued for each of the defendants named in the second amended complaint, however, the summonses were all returned as unexecuted. ECF Nos. 63, 64, 70, 71.

### C.    Motion to Dismiss

On November 27, 2023, Defendant Searls, through counsel, filed a motion to dismiss and memorandum in support thereof. ECF No. 65, 66. Searls argues that Claims 1 and 2 are not directed to him, and that he is sole subject of Claims 3 and 4. As to Claim 5, he responds as a member of "Huttonsville staff." ECF No. 66 at 2. However, Searls

3

contends that the Plaintiff has failed to state a claim upon which relief may be granted against him on any claim, and that he is not liable under § 1983 because: (1) the conditions alleged by the Plaintiff in his third claim are "not sufficiently serious to give rise to an Eighth Amendment violation" as required by Farmer v. Brennan, 511 U.S. 825, 834 (1994) [ECF No. 66 at 5–7]; (2) the Plaintiff's fourth claim, that Searls was deliberately indifferent, does not allege sufficient facts to support a reasonable inference that Searls knew there was a substantial risk of harm to the Plaintiff, and further that Searls is not liable to Plaintiff based on the doctrine of respondeat superior, which generally does not apply in § 1983 cases [Id. at 8–12]; and (3) the Plaintiff's fifth claim that he received inadequate medical care fails to state a claim against Searls, because the claim lacks facts sufficient to support a reasonable inference that Searls was deliberately indifferent, and because Searls was entitled to rely upon the professional judgment of trained medical personnel [Id. at 12–14]. In the alternative, Searls contends that the affirmative defense of qualified immunity protects him from liability [ECF No. 66 at 15].

The docket does not reflect that Defendants John Doe, Jane Doe, and Wexford Health Care have ever been served process or filed any pleadings.

### D.    Plaintiff's Response to Motion to Dismiss

The Plaintiff filed his response [ECF No. 75] to the motion to dismiss, and a memorandum of law [ECF No. 76], on January 3, 2024, which argues that the motion to dismiss is based solely on qualified immunity. ECF No. 76 at 1. The Plaintiff further asserts that he was placed in punitive, rather than administrative segregation, thereby denying him privileges to which he was otherwise entitled. Id. at 2. Further, the Plaintiff

argues that because Searls was the warden at Huttonsville at the time he alleges he was injured, that Searls should be subjected to supervisory liability under § 1983. Id. at 3–4.

The Plaintiff further contends that he sent multiple grievances "to medical," all of which "had to pass Shelby Seals command post" before the Plaintiff could exhaust his administrative remedies, but that Searls failed to respond to his grievances. Id. at 4. Although such a claim is not included in the second amended complaint, in his response, the Plaintiff alleges that after he filed a grievance that he was beaten, placed in segregation without adequate medical care causing his wounds to become infected, "kept in segregation for days without [receiving] disciplinary action," and was subjected to severe emotional distress. Id.

The Plaintiff argues that his complaint should be construed liberally, and that "there are underlying issues that need[ ] to be addressed." Id. at 6. Further, the Plaintiff seeks discovery to identify John Doe and Jane Doe, and contends that qualified immunity should not be granted to Searls. Id. at 6–7. Finally, the Plaintiff argues that Searls should be held liable under the theory of supervisor liability because Searls' position as warden imputed to him that the actions of John Doe and Jane Doe were unlawful. Id. at 7.

### III.    LEGAL STANDARD

#### A.    Pro Se Litigants.

Courts must read pro se allegations in a liberal fashion and hold those pro se pleadings "to less stringent standards than formal pleadings drafted by lawyers." Haines v. Kerner, 404 U.S. 519, 520 (1972). Pursuant to 28 U.S.C. § 1915A(b), the Court is required to perform a judicial review of certain suits brought by prisoners and must dismiss a case at any time if the Court determines that the complaint is frivolous, malicious, fails

to state a claim upon which relief can be granted, or seeks monetary relief against a defendant who is immune from such relief. A complaint is frivolous if it is without arguable merit either in law or in fact. Neitzke v. Williams, 490 U.S. 319, 325 (1989) (superseded by statute). The Supreme Court in Neitzke recognized that:

> Section 1915(d)[2] is designed largely to discourage the filing of, and waste of judicial and private resources upon, baseless lawsuits that paying litigants generally do not initiate because of the costs of bringing suit and because of the threat of sanctions for bringing vexatious suits under Federal Rule of Civil Procedure 11. To this end, the statute accords judges not only the authority to dismiss a claim based on an indisputably meritless legal theory, but also the unusual power to pierce the veil of the complaint's factual allegations and dismiss those claims whose factual contentions are clearly baseless.

490 U.S. at 327.

"While the courts liberally construe *pro se* pleadings as a matter of course . . ., judges are not also required to construct a party's legal arguments for him." Small v. Endicott, 998 F.2d 411, 417- 18 (7th Cir. 1993) (quoting Haines v. Kerner).

**B.**   **§ 1983 Claims**

The Supreme Court has held that:

> Title 42 U.S.C. § 1983 provides a cause of action against "[e]very person who, under color of any statute ... of any State ... subjects, or causes to be subjected, any citizen ... to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws...." The purpose of § 1983 is to deter state actors from using the badge of their authority to deprive

---

[2] The version of 28 U.S.C. § 1915(d) which was effective when Neitzke was decided provided, "The court may request an attorney to represent any such person unable to employ counsel and may dismiss the case if the allegation of poverty is untrue, or if satisfied that the action is frivolous or malicious." As of April 26, 1996, the statute was revised and 28 U.S.C. § 1915A(b) now provides, "On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint-- (1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief from a defendant who is immune from such relief."

individuals of their federally guaranteed rights and to provide
relief to victims if such deterrence fails.

Wyatt v. Cole, 504 U.S. 158, 161 (1992) (citing Carey v. Piphus, 435 U.S. 247, 254–257

(1978). In Gomez v. Toledo, 446 U.S. 635 (1980), the Supreme Court succinctly stated

what a plaintiff must allege to sustain a civil rights action:

> By the plain terms of § 1983, two—and only two—allegations
> are required in order to state a cause of action under that
> statute. First, the plaintiff must allege that some person has
> deprived him of a federal right. Second, he must allege that
> the person who has deprived him of that right acted under
> color of state or territorial law.

Gomez, 446 U.S. at 640.

"Government officials may not be held liable for the unconstitutional conduct of their

subordinates under a theory of respondeat superior." Ashcroft v. Iqbal, 556 U.S. 662, 676

(2009). "Because vicarious liability is inapplicable to Bivens and § 1983 suits, a plaintiff

must plead that each Government-official defendant, through the official's own individual

actions, has violated the Constitution." Id. "A *Bivens* claim is brought against the individual

official for his or her own acts, not the acts of others." Ziglar v. Abassi, 137 S.Ct. 1843,

1860 (2017).

In Shaw v. Stroud, 13 F.3d 791, 799 (4th Cir. 1994), the Fourth Circuit:

> set forth three elements necessary to establish supervisory
> liability under § 1983: (1) that the supervisor had actual or
> constructive knowledge that his subordinate was engaged in
> conduct that posed "a pervasive and unreasonable risk" of
> constitutional injury to citizens like the plaintiff; (2) that the
> supervisor's response to that knowledge was so inadequate
> as to show "deliberate indifference to or tacit authorization of
> the alleged offensive practices,"; and (3) that there was an
> "affirmative causal link" between the supervisor's inaction and
> the particular constitutional injury suffered by the plaintiff.

(Internal citations omitted). The Court further explained that "[t]o satisfy the requirements of the first element, a plaintiff must show the following: (1) the supervisor's knowledge of (2) conduct engaged in by a subordinate (3) where the conduct poses a pervasive and unreasonable risk of constitutional injury to the plaintiff." Shaw, supra, citing Slakan v. Porter, 737 F.2d 368 (4th Cir. 1984).

"A plaintiff may establish deliberate indifference by demonstrating a supervisor's "continued inaction in the face of documented widespread abuses"; however, a plaintiff claiming deliberate indifference "assumes a heavy burden of proof." Shaw, 13 F.3d at 799. "Causation is established when the plaintiff demonstrates an "affirmative causal link" between the supervisor's inaction and the harm suffered by the plaintiff." Id.

### C.   Motions to Dismiss

Federal Rule of Civil Procedure 12(b)(6) permits dismissal of a case when a complaint fails to state a claim upon which relief can be granted. The Federal Rules of Civil Procedure require only, "'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'" Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)). Courts long have cited, "the accepted rule that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley, 355 U.S. at 45-46.

Plaintiff is proceeding *pro se* and therefore the Court must liberally construe his pleadings. Estelle v. Gamble, 429 U.S. 97, 106 (1976); Haines v. Kerner, 404 U.S. 519, 520 - 1 (1972) (per curiam); Erickson v. Pardus, 551 U.S. 89, 94, 127 S.Ct. 2197 (2007).

Although a complaint need not contain detailed factual allegations, a plaintiff's obligation in pleading, "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do...." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007). Accordingly, "[f]actual allegations must be enough to raise a right to relief above the speculative level," to one that is "plausible on its face." Id. at 555, 570. In Twombly, the Supreme Court found that, "because the plaintiffs [ ] have not nudged their claims across the line from conceivable to plausible, their complaint must be dismissed." Id. at 570. Thus, to survive a motion to dismiss, a plaintiff must state a plausible claim in his complaint which is based on cognizable legal authority and includes more than conclusory or speculative factual allegations.

"[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss." Ashcroft v. Iqbal, 556 U.S. 662, 679, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009). Thus, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," because courts are not bound to accept as true a legal conclusion couched as a factual allegation. Id. at 678. "[D]etermining whether a complaint states a plausible claim . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id. at 679. Thus, a well-pleaded complaint  must offer more than, "a sheer possibility that a defendant has acted unlawfully," in order to meet the plausibility standard and survive dismissal for failure to state a claim.  Id. at 678.

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly,  it does not resolve contests surrounding facts, the merits of a claim, or the applicability of defenses." Republican Party of North Carolina v. Martin, 980 F.2d 943, 952 (4th Cir. 1992) (citing 5A Charles Alan Wright & Arthur R. Miller, Federal Practice and

<u>Procedure</u> § 1356 (1990)).  In considering a motion to dismiss for failure to state a claim, a plaintiff's well-pleaded allegations are taken as true and the complaint is viewed in the light most favorable to the plaintiff.  <u>Mylan Labs, Inc. v. Matkari</u>, 7 F.3d1130, 1134 (4th Cir. 1993); <u>see also</u> <u>Martin</u>, 980 F.2d at 952.

## IV.    ANALYSIS

**A.    First and Second Claims for Relief, and Partial Fifth Claim for Relief: Lack of Jurisdiction over Defendants John Doe, Jane Doe, and Wexford Health Care Based on Failure to Perfect Service**

Before addressing the merits of the Plaintiff's claims for relief against Searls, the undersigned addresses the lack of jurisdiction over the other named Defendants. The second amended complaint named four Defendants: (1) Searls, who has appeared and responded to the complaint; (2) Correctional Officer John Doe; (3) Nurse Jane Doe; and (4) Wexford Health Care. ECF No. 60 at 1. The Plaintiff failed to properly identify John Doe or Jane Doe, but provided their place of employment as Huttonsville Correctional Center. <u>Id.</u> at 2. Wexford Health Care was identified as the "healthcare provider for [West Virginia] prisons," with a listed place of employment as "Huttonsville Correctional [Center]." However, a review of the docket shows that these named Defendants, John Doe, Jane Doe, and Wexford Health Care, were never served with a copy of the complaint.

The Court notes that under the mandate of Federal Rule of Civil Procedure 4(m), the Plaintiff has failed to timely effect service upon those Defendants. The rule provides a time limit for service:

> If a defendant is not served within 90 days after the complaint is filed, the court—on motion or on its own after notice to the plaintiff—must dismiss the action without prejudice against that defendant or order that service be made within a specified time. But if the plaintiff shows good cause for the failure, the

> court must extend the time for service for an appropriate period. This subdivision (m) does not apply to service in a foreign country under Rule 4(f), 4(h)(2), or 4(j)(1), or to service of a notice under Rule 71.1(d)(3)(A).

Fed. R. Civ. P. 4(m).

The Plaintiff filed his second amended complaint on October 20, 2023. ECF No. 60. Ninety days from October 20, 2023, was January 18, 2024. However, no returns of service for Correctional Officer John Doe, Nurse Jane Doe, and Wexford Health Care have been filed with the Clerk in the 90 days after the Plaintiff filed his second amended complaint on October 20, 2023.[3]

Based on the Plaintiff's failure to comply with Federal Rule of Civil Procedure 4(m) which requires him to have effected service within 90 days of filing the Amended Complaint, the undersigned recommends that Correctional Officer John Doe, Nurse Jane Doe, and Wexford Health Care should be dismissed without prejudice for lack of jurisdiction. Because the Plaintiff's first two claims for relief concern John Doe and Jane Doe, the undersigned finds that those claims should be dismissed without prejudice. Further, to the extent that the Plaintiff's fifth claim which identifies "Huttonsville staff (Defendants)" as wrongdoers, those claims should also be dismissed without prejudice as to John Doe and Jane Doe.

---

[3] The Plaintiff's complaint lists "John Doe" as a correctional officer and "Jane Doe" as a nurse without any further identification, and there is no record that the Plaintiff has attempted to further identify or serve those individuals. The Fourth Circuit has upheld the dismissal of John Doe defendants, finding their dismissal "is also supported by Rule 4(m) of the Federal Rules of Civil Procedure.[ ] Rule 4(m) requires the dismissal of defendants who remain unserved ninety days after the filing of a complaint unless 'the plaintiff shows good cause.' " Attkisson v. Holder, 925 F.3d 606, 627 (4th Cir. 2019), as amended (June 10, 2019). Here, the Plaintiff has presented no good cause to excuse his failure to serve the defendants.

**B.      Third Claim for Relief: Cruel and Unusual Punishment by Searls**

The Plaintiff's third claim for relief, that Warden Searls was responsible for prison conditions which violated the Plaintiff's Eighth Amendment rights, is without merit. "Prisoners alleging that they have been subjected to unconstitutional conditions of confinement must satisfy the Supreme Court's two-pronged test set forth in *Farmer v. Brennan*, 511 U.S. 825, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994)." Scinto v. Stansberry, 841 F.3d 219, 225 (4th Cir. 2016), *cert. denied sub nom*. Phillip v. Scinto, 138 S. Ct. 447, 199 L. Ed. 2d 340 (2017). "In order to establish that she has been subjected to cruel and unusual punishment, a prisoner must prove (1) that "the deprivation of [a] basic human need was objectively 'sufficiently serious,' " and (2) that "subjectively 'the officials act[ed] with a sufficiently culpable state of mind.' " De'Lonta v. Angelone, 330 F.3d at 634 (quoting Strickler v. Waters, 989 F.2d 1375, 1379 (4th Cir. 1993)). As explained in Scinto, the "objective" first prong of Farmer requires plaintiffs to demonstrate that "the deprivation alleged [was], objectively, 'sufficiently serious.' " 841 F.3d at 225. Scinto further held that to be "sufficiently serious," the deprivation must be "extreme" by posing "a serious or significant physical or emotional injury resulting from the challenged conditions," or "a substantial risk of such serious harm resulting from . . . exposure to the challenged conditions." Id., quoting De'Lonta v. Angelone, 330 F.3d 630, 634 (4th Cir. 2003) (internal quotation marks and citation omitted).

Generally, courts have found that "extreme deprivations are required to make out a conditions-of-confinement claim. Because routine discomfort is part of the penalty that criminal offenders pay for their offenses against society, only those deprivations denying the minimal civilized measure of life's necessities are sufficiently grave to form the basis

of an Eighth Amendment violation.'" <u>Strickler v. Waters</u>, 989 F.2d 1375, 1380 N. 3 (4th Cir. 1993) (cleaned up, quoting <u>Rhodes v. Chapman</u>, 452 U.S. 337, 347, 101 S.Ct. 2392, 2399 (1981), and <u>Wilson v. Seiter</u>, 501 U.S. 294, 298, 111 S.Ct. 2321, 2324 (1991)). However, "the Constitution does not mandate comfortable prisons, and prisons . . . which house persons convicted of serious crimes, cannot be free of discomfort." <u>Rhodes v. Chapman</u>, 452 U.S. at 349, 101 S. Ct. at 2400.

### 1.    Denial of Telephone Privileges is not a Constitutional Violation

The Plaintiff's claim that he was denied telephone privileges does not meet the standard to establish that a violation of his Eighth Amendment rights pursuant to <u>Farmer</u>. First, the Plaintiff cannot demonstrate that the denial of phone privileges constitutes a deprivation of a basic human need, which was objectively sufficiently serious. Nor does he allege that he suffered any cognizable injury as a result of his alleged violation of rights.

A review of State of West Virginia Division of Corrections Policy Directive 326.00, related to "Special Management/Punitive Segregation/Administrative Segregation" provides that "[i]nmates in Administrative Segregation and Special Management shall be allowed                                      telephone                                      privileges." <u>https://www.law.umich.edu/special/policyclearinghouse/Documents/WV%20-32600%20OCR.pdf</u> at *5. However, in the Fourth Circuit, the denial of phone privileges has not been found to be "sufficiently serious" in the context of the <u>Farmer</u> test to support an Eighth Amendment violation. "It is well established that inmates do not have an absolute right to use a telephone." <u>Montgomery v. Medie</u>, 535 F.Supp.3d 522, 2021 WL 2065410 (E.D. Va. Apr. 26, 2021) (citing <u>United States v. Alkire</u>, 82 F.3d 411 (table), 1996 WL 166400, at *1 [published in full-text format at 1996 U.S. App. LEXIS 7021*1-2] (4th

Cir. Apr. 10, 1996) ("there is no constitutional or federal statutory right to use of a telephone while in prison.")). The Fourth Circuit has upheld a "de facto" ban on telephone privileges for fifty years, because the prisoner "has not alleged that he is experiencing an extreme deprivation or that he has suffered a significant injury. Therefore, [the prisoner] has failed to demonstrate that his Eighth Amendment rights have been violated." Thomas v. Drew, 365 F. App'x 485, 488 (4th Cir. 2010).[4]

Here, the Plaintiff does not allege that he was posed with a serious or significant physical or emotional injury by being denied telephone privileges. Nor does the Plaintiff claim that the deprivation of phone privileges was "extreme," and thereby posed "a serious or significant physical or emotional injury resulting from the challenged conditions," or "a substantial risk of such serious harm resulting from . . . exposure to the challenged conditions," as required by Scinto. The deprivation complained of, loss of phone privileges, did not deny the Plaintiff "the minimal civilized measure of life's necessities" sufficiently grave to form the basis of an Eighth Amendment violation, as required by Rhodes, 452 U.S.at 347, 101 S.Ct. at 2399

For all of these reasons the undersigned finds that the Plaintiff cannot meet the first prong of the Farmer test to establish an Eighth Amendment violation based on his denial of phone privileges.

---

[4] Other circuit courts have also held that the denial of phone privileges does not comprise a violation of a prisoner's Constitutional rights. In Castillo v. FBOP FCI Fort Dix, 221 Fed. Appx. 172, 176 (3rd Cir. 2007), the Third Circuit held that a two-year loss of phone and visitation privileges "do[es] not amount to excessive punishment under the Eighth Amendment." See also McDowell v. Litz, 419 Fed Appx. 149, 152 (3rd Cir. 2011) (affirming the district court's order that upheld a 90-day suspension of telephone privileges). See Allen v. Alexsander, No. 19-1315, 2019 WL 4667707, at *2 (6th Cir. Sept. 12, 2019) (affirming the district court's conclusion that the prisoner failed to state a claim that the loss of his phone privileges violated the Eighth Amendment, absent any showing that basic human needs were not met).

Because the Plaintiff cannot meet the first prong of the <u>Farmer</u> test as to his claim regarding his loss of phone privileges, this Court need not address the second prong which determines whether Searls subjectively had a sufficiently culpable state of mind. For all these reasons, the Plaintiff's third claim for relief, as relates to his denial of telephone privileges, fails to state a claim upon which relief may be granted.

### 2.   Denial of Commissary Privileges is not a Constitutional Violation

The Plaintiff also claims that he was denied commissary privileges[5], but cannot demonstrate that a loss of commissary privileges constitutes an Eighth Amendment violation. ECF No. 60 at 8. Applying the two-pronged <u>Farmer</u> standard, the Plaintiff cannot demonstrate that his denial of commissary privileges constitutes a deprivation of his basic human need which was objectively sufficiently serious to satisfy the first prong. Commissary items typically represent optional purchases of food, toiletries, over-the-counter medications, and clothing which are beyond the necessities provided by the DOC.

However, under the State of West Virginia Division of Corrections Policy Directive 325.00, "Inmates in Administrative Segregation and Special Management shall have access to programs and services that include, but shall not be limited to, the following: educational services, commissary services, library services, social services, counseling services, religious guidance, and recreational programs." https://www.law.umich.edu/special/policyclearinghouse/Documents/WV%20-32600%20OCR.pdf at *5. Nevertheless, various district courts in the Fourth Circuit have declined to find civil rights violations based on denial or difficulty accessing a prison's commissary. <u>Ryidu-X v. Maryland Div. of Correction</u>, No. CIV.A. WDQ-14-1735, 2015 WL

---

[5] The Plaintiff does not specify any commissary items that he was allegedly denied.

4095522, at *2 (D. Md. July 6, 2015) ("the Court finds that Ryidu–X has not sustained a violation of his civil rights based on difficulties in obtaining access to prison commissary items"); Lipscomb v. Whitley, No. 7:20CV00411, 2022 WL 2680614, at *8 (W.D. Va. July 12, 2022) (Prisoner did "not state[ ] facts showing that any of the living conditions imposed on him, while in maximum custody or disciplinary segregation, posed a substantial risk of sufficiently serious harm to him" including the temporary loss of television and commissary privileges); Bailey v. Rife, No. 1:21-CV-00424, 2021 WL 6496561, at *10 (S.D.W. Va. Nov. 19, 2021), report and recommendation adopted, No. 1:21-CV-00424, 2022 WL 130746 (S.D.W. Va. Jan. 13, 2022) ("to the extent that Plaintiff is claiming his liberty interest in retaining 'outside recreation,' commissary, and telephone privileges were violated, the undersigned finds that Plaintiff's claim is without merit") (quoting White v. Keller, 438 F.Supp. 110, 114 (D.C. Md. 1977), aff'd 488 F.2d 913 (4th Cir. 1978)); Goodwin v. Schwartz, No. 8:10-1760-CMC-BHH, 2010 WL 3489092, at *2 (D.S.C. Aug. 11, 2010), report and recommendation adopted, No. CIV.A. 8:10-1760, 2010 WL 3489097 (D.S.C. Sept. 1, 2010) ("Plaintiff complains that his canteen and recreation privileges have been removed or curtailed; neither allegation implicates constitutional rights. Canteen access is not a protected liberty interest.") (Citing Madison v. Parker, 104 F.3d 765, 768 (5th Cir.1997) (holding that commissary restrictions did not entitle inmate to due process protections during disciplinary proceeding)); Alley v. Angelone, 962 F. Supp. 827, 837 (E.D. Va. 1997) (Court found no constitutional violation where after prison was on lockdown the Plaintiff alleged a laundry list of deprivations, including denial of recreation, commissary privileges, telephone access, mail, showers, rehabilitative programs, fresh air, personal hygiene items and cleaning products); Trujillo v. Young, No.

CIV.A.7:02CV01083, 2003 WL 23312781, at *3 (W.D. Va. June 5, 2003) ("Inmates do not have a constitutionally protected right to purchase commissary items at low prices"). Further, in <u>Thomas v. Drew</u>, 365 Fed. Appx. 485, 487, the Fourth Circuit let stand a prisoner's challenge to his loss of commissary privileges.

It appears that to the undersigned, and various district courts within the Fourth Circuit, denial of commissary privileges does not constitute a deprivation of rights. Moreover, even if denial of commissary privileges did constitute a deprivation of rights, that deprivation is not sufficiently serious to establish an Eighth Amendment violation, as required by the first prong of the <u>Farmer</u> test. Pursuant to <u>Scinto</u> to be "sufficiently serious," a deprivation of rights must be "extreme" by posing "a serious or significant physical or emotional injury resulting from the challenged conditions," or "a substantial risk of such serious harm resulting from . . . exposure to the challenged conditions." 841 F.3d at 225. The Plaintiff does not allege that he was exposed to a serious or significant physical or emotional injury by being denied commissary privileges. For all of these reasons the undersigned finds that the Plaintiff cannot meet the first prong of the <u>Farmer</u> test to establish an Eighth Amendment violation based on his denial of commissary privileges.

Further, the Plaintiff cannot demonstrate that the Defendant Searls acted with a sufficiently culpable state of mind to establish liability under § 1983. Accordingly, Plaintiff's third claim for relief, as relates to his denial of commissary privileges, fails to state a claim upon which relief may be granted.

### 3.   Denial of "Admin/Seg" Privileges is not a Constitutional Violation

The Plaintiff's third claim of denial of privileges, states that he was denied "admin[istrative]-seg[regation]" privileges, although he does not specify any privileges that he was allegedly denied. ECF No. 60 at 8. Again, the Plaintiff cannot demonstrate that a loss of administrative segregation privileges[6] constitutes an Eighth Amendment violation.

Defendant Searls argues that because the Plaintiff does not identify with any specificity what "admin-seg privileges" he was allegedly denied, "this barebones allegation is not enough to show that the alleged deprivation is objectively 'sufficiently serious' to sustain an Eighth Amendment claim." The undersigned notes that even if the Plaintiff's claims were more specific, he fails to argue that he suffered any physical or emotional injury as a result of the alleged violation of his rights. The Plaintiff claims that his placement in administrative segregation caused him "physical and emotional abuse," but again he does not specify what injuries he alleged incurred from his placement in administrative segregation. Rather, the physical injuries, lacerations and scarring, that the Plaintiff complains of occurred when the Plaintiff was in B2 Dorm, not when he was in administrative segregation. ECF No. 60 at 7–8.

Further, the Plaintiff's third claim for relief fails to allege that Defendant Searls, "through the official's own individual actions, has violated the Constitution," as required by Iqbal. In the second amended complaint the Plaintiff claims that Searls "placed Plaintiff

---

[6] As noted above, the State of West Virginia Division of Corrections Policy Directive 325.00, "Inmates in Administrative Segregation and Special Management shall have access to programs and services that include, but shall not be limited to, the following: educational services, commissary services, library services, social services, counseling services, religious guidance, and recreational programs." https://www.law.umich.edu/special/policyclearinghouse/Documents/WV%20-32600%20OCR.pdf at *5.

in segregation [and] would not allow him to use phone, order commissary, or allow him any admin[istrative] seg[regation] privileges, although [the Plaintiff was] taken to seg[regation] for medical reasons." ECF No. 60 at 8. Although the Plaintiff alleges that Searls, as warden, "placed" the Plaintiff in administrative segregation, he does not assert he had any personal interaction with Searls. Id. To the extent that the Plaintiff claims that Searls is responsible for the actions of subordinate officials at Huttonsville Correctional Facility, pursuant to Iqbal, individuals with supervisory responsibility are immune from liability from allegations that subordinate officials violated Plaintiff's civil rights. For this reason, and the reasons stated above, this claim is without merit.

Finally, for all the reasons stated in sections IV.B.1., IV.B.2, and IV.B.3 above, the Plaintiff has failed to state a claim upon which relief may be granted related to his alleged denial of telephone, commissary, and administrative segregation privileges. Under the Twombly standard, the Plaintiff has failed in these claims to assert factual allegations which raise a right to relief above the speculative level to one that is plausible on its face. The cases cited herein demonstrate that, absent extraordinary circumstances which are not alleged here, the denial of telephone, commissary, and administrative segregation privileges does not substantiate an Eighth Amendment claim. Accordingly, because the Plaintiff's third claim for relief fails to state a plausible claim upon which relief may be granted, Defendant Searls' motion to dismiss should be granted.

### C.   Plaintiff's Fourth Claim Against Searls for Failure to Protect

The Plaintiff's fourth claim alleges that Searls failed to protect the Plaintiff from other "gang member" inmates at Huttonsville. ECF No. 60 at 8. Further, the Plaintiff asserts that he requested to be placed in a "dorm that would allow minimal conflict upon

release from seg[regation]." Id. He claims that he was stabbed because he was placed in Dorm B2. Although not explicitly stated, liberally construed, it appears that the Plaintiff claims that Searls failed to grant the Plaintiff's request to be placed in a low-risk dorm.

However, the Plaintiff does not allege that Searls was personally involved in any action or inaction related to the Plaintiff's cell assignment. ECF No. 60 at 8. The Plaintiff's failure to allege that Searls, "through the official's own individual actions, has violated the Constitution," as required by Iqbal, constitutes a failure to state a claim upon which relief may be granted. The Plaintiff's claim that Searls "failed to protect" him from other inmates, does not assert he had any personal interaction with Searls. Id. Under the holding of Iqbal, to the extent that the Plaintiff claims that Searls is responsible for the actions of subordinate officials at Huttonsville Correctional Facility, individuals with supervisory responsibility, such as Searls, are immune from liability from allegations that subordinate officials violated Plaintiff's civil rights. Accordingly, because the Plaintiff can prove no set of facts which would entitle him to relief for his fourth claim, he fails to state a claim upon which relief may be granted, and his complaint should be dismissed with prejudice as to the fourth claim for relief.

### D. Plaintiff's Fifth Claim Against Searls for Failure to Provide Medical Care

The Plaintiff's fifth claim for relief is that unidentified "Huttonsville staff" failed to protect him, then failed to provide him with adequate medical relief after his assault. ECF No. 60 at 8. As addressed above, the only defendant both identified and served is Searls. However, the Plaintiff does not allege that he had any contact with Searls directly or indirectly, with regard to his alleged denial of medical care. In fact, he fails to state how Searls personally violated his civil rights or how his actions violated any law or the

Constitution. And as noted above, "Government officials may not be held liable for the unconstitutional conduct of their subordinates." Ashcroft v. Iqbal, supra, 556 U.S. at 676.

To the extent that the Plaintiff alleges that Searls as warden at Huttonsville Correctional Facility, possessed personal knowledge of any problems with the Plaintiff's medical treatment, the Plaintiff still fails to state a claim upon which relief can be granted. When a supervisor is not personally involved in the alleged wrongdoing, he may be liable under §1983 if a subordinate acts pursuant to an official policy or custom for which he is responsible. Fisher v. Washington Metropolitan Area Transit Authority, 690 F. 2d 1133 (4th Cir. 1982) (abrogated on other grounds by County of Riverside v. McLaughlin, 500 U.S. 44 (1991)). The Plaintiff's claim fails as his broad assertions do not identify what official policy or custom were carried out by Searls's subordinates, and for which he was responsible.

Further, the Plaintiff fails to meet the elements necessary to establish supervisory liability pursuant to Shaw v. Stroud. The Plaintiff fails to show that Searls had actual or constructive knowledge of any subordinates' conduct, that Searls' response to that knowledge was so inadequate that it demonstrated deliberate indifference to the alleged offensive practices, or any affirmative causal link between Searls alleged inaction and the harm allegedly suffered by Plaintiff.

Moreover, in reviewing claims of medical care, supervisors are entitled to rely on the judgment of the medical staff as to the course of treatment prescribed. See Shakka v. Smith, 71 F.3d 162, 167 (4th Cir. 1995) (citing Miltier v. Beorn, 896 F.2d 848, 854 (4th Cir. 1990) (stating that supervisory prison officials are entitled to rely on professional judgment of trained medical personnel and may be found to have been

deliberately indifferent by intentionally interfering with a prisoner's medical treatment ordered by such personnel). Thus, even assuming Searls as a supervisory defendant, had notice of Plaintiff's medical treatment or lack thereof, that notice does not rise to the level of personal involvement for liability in this suit. Further, to the extent that Searls properly relied on any professional judgment of trained medical personnel regarding Plaintiff's medical needs, that reliance was proper based on the holding of Miltier, and Searls may not be held liable under § 1983 for that reliance.

Additionally, as noted above, vicarious liability under the theory of respondeat superior is inapplicable to § 1983 actions. Section 1983 claims are brought against individual state actors for their own acts. Ashcroft v. Iqbal, supra, 556 U.S. at 676. However, the Plaintiff has failed to articulate any violation of his Constitutional rights by Searls. Further, the Plaintiff failed to allege that Searls personally or in his individual capacity took any action which violated his Constitutional rights. Accordingly, the Court finds that Searls is entitled to qualified immunity against the Plaintiff's claims that Searls should be liable as the supervisor of subordinates whom he claims violated his rights. Consistent with the holdings of the United States Supreme Court, it is clear that the Plaintiff fails to present a claim upon which relief can be granted as relates to Searls related to his medical care. Because the Plaintiff can prove no set of facts which would entitle him to relief, he fails to state a claim upon which relief may be granted, and his complaint should be dismissed with prejudice as to Searls.

Finally, to the extent that Plaintiff asserts claims against Searls in his official capacity, he is not liable under § 1983. The Supreme Court has long recognized that such state officials are immune from liability under § 1983:

22

> Obviously, state officials literally are persons. But a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office. As such, it is no different from a suit against the State itself. We see no reason to adopt a different rule in the present context, particularly when such a rule would allow petitioner to circumvent congressional intent by a mere pleading device.
>
> We hold that neither a State nor its officials acting in their official capacities are "persons" under § 1983.

Will v. Michigan Dep't of State Police, 491 U.S. 58, 71 (1989) (internal citations omitted). Accordingly, even if the Court were to consider the Plaintiff's claims against Searls, as being asserted against him in his official capacity, the Plaintiff has failed to state a claim upon which relief may be granted.

For all the above reasons, it appears that Plaintiff has failed to state a claim against any named Defendant. The Plaintiff fails to state a claim as to Searls, and thus Claim 5 should be dismissed with prejudice as to Searls. As to the other Defendants, John Doe, Jane Doe, and Wexford Health Care, because those Defendants have not been served with process in compliance with Federal Rule of Civil Procedure 4(m), the Plaintiff's fifth claim against John Doe, Jane Doe, and Wexford Health Care should be dismissed without prejudice.

## V.    RECOMMENDATION

Based on the foregoing, the undersigned **RECOMMENDS** that the Plaintiff's second amended complaint [ECF No. 60] be **DISMISSED WITHOUT PREJUDICE AS TO JOHN DOE, JANE DOE, AND WEXFORD HEALTH CARE,** and **WITH PREJUDICE AS TO SEARLS**.

Further, it is **RECOMMENDED** that Defendant Searls' motion to dismiss [ECF No. 65] be **GRANTED**.

**Within fourteen (14) days** after being served with a copy of this Recommendation, any party may file with the Clerk of the Court, **specific written objections, identifying the portions of the Report and Recommendation to which objection is made, and the basis of such objection.** A copy of such objections should also be submitted to the Honorable Gina M. Groh, United States District Judge. Objections shall not exceed ten (10) typewritten pages or twenty (20) handwritten pages, including exhibits, unless accompanied by a motion for leave to exceed the page limitation, consistent with LR PL P 12.

**Failure to file written objections as set forth above shall constitute a waiver of de novo review by the District Court and a waiver of appellate review by the Circuit Court of Appeals.** Snyder v. Ridenour, 889 F.2d 1363 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).

This Report and Recommendation completes the referral from the district court. The Clerk is directed to terminate the Magistrate Judge's association with this case.

The Clerk is directed to provide a copy of this Report and Recommendation to the *pro se* Plaintiff by certified mail, return receipt requested, to his last known address as reflected on the docket sheet, and to all counsel of record, as applicable, as provided in the Administrative Procedures for Electronic Case Filing in the United States District Court for the Northern District of West Virginia.

DATED:      February 2, 2024

/s/ *Robert W. Trumble*
ROBERT W. TRUMBLE
UNITED STATES MAGISTRATE JUDGE